**Linda J. Larkin**, OSB# 79295
E-mail: larkinl@bennetthartman.com
BENNETT, HARTMAN, MORRIS & KAPLAN, LLP
210 SW Morrison, Suite 500
Portland, OR   97204-3149
Telephone:  503-227-4600
Facsimile:  503-248-6800
Attorney for All Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| OREGON AND SOUTHWEST WASHINGTON IBEW-NECA ELECTRICAL WORKERS AUDIT COMMITTEE<br><br>Plaintiffs,<br><br>vs.<br><br>ALAMEDA ELECTRIC LLC,<br><br>Defendant. | Civil No. _____<br><br>COMPLAINT<br><br>(ERISA Action for Delinquent Contributions, Specific Enforcement of Collective Bargaining Agreement, and Audit) |

**PARTIES**

1. At all material times hereto, Plaintiff the Oregon-SW Washington NECA-IBEW Electrical Workers Audit Committee, comprised of Timothy J. Gauthier and Gary Young (the "Audit Committee"), was and is the designated collection agent for the trustees of the Trust Funds, authorized to collect from signatory employers the fringe benefit contributions and other amounts required to be paid by employers or withheld from their employees' wages, under a Collective Bargaining Agreement ("CBA") and the provisions of the Trust Agreements.

2.      Pursuant to the terms of the CBA, and pursuant to policies and procedures agreed upon by Oregon-Columbia Chapter of National Electrical Contractors Association ("NECA"), International Brotherhood of Electrical Workers, Local 48 ("Local 48") , Harrison Electrical Workers Trust Fund ("Harrison Trust"), Edison Pension Trust ("Edison Trust"), National Electrical Benefit Fund ("NEBF"), International Brotherhood of Electrical Workers District No. 9 Pension Plan ("District 9 Pension Plan"), NECA-IBEW Electrical Training Trust ("Training Trust"), Barnes-Allison Labor-Management Cooperation Trust Committee ("BALMCC"), the Audit Committee is authorized to take appropriate action, on behalf of the Trust Funds and IBEW Local 48, to collect all amounts owed by an employer under, and enforce the terms of, the CBA requiring payment of fringe benefit contributions, interest, liquidated damages, and collection costs.

3.      At all material times hereto, plaintiff Harrison Electrical Workers Trust Fund ("Harrison Trust") is an employee benefit plan within the meaning of 29 USC § 1002, *et. seq.* of the Employee Retirement Income Security Act of 1974, as amended (ERISA).  Harrison Trust is administered by a Board of Trustees composed of an equal number of representatives from labor and management designated in accordance with the provisions of 29 USC § 186 (b ).

4.      At all material times hereto, plaintiff Edison Pension Trust ("Edison Trust") is an employee benefit plan within the meaning of 29 USC § 1002, *et seq* of the Employee Retirement Income Security Act of 1974, as amended (ERISA).  Edison Trust is administered by a Board of Trustees composed of an equal number of representatives from labor and management designated in accordance with the provisions of 29 USC § 186.

5. At all material times hereto, plaintiff National Electrical Benefit Fund ("NEBF") is an employee benefit plan within the meaning of 29 USC § 1002, *et. seq.* of the Employee Retirement Income Security Act of 1974, as amended (ERISA). NEBF is administered by a Board of Trustees composed of an equal number of representatives from labor and management designated in accordance with the provisions of 29 USC § 186.

6. At all material times hereto, plaintiff International Brotherhood of Electrical Workers District No. 9 Pension Plan ("District 9 Pension Plan") is an employee benefit plan within the meaning of 29 USC § 1002, *et. seq.* of the Employee Retirement Income Security Act of 1974, as amended (ERISA). District 9 Pension Plan is administered by a Board of Trustees composed of an equal number of representatives from labor and management designated in accordance with the provisions of 29 USC § 186.

7. At all material times hereto, plaintiff NECA-IBEW Electrical Training Trust; ("Training Trust") was and is an employee benefit plan within the meaning of 29 USC § 1002, *et. seq.* of the Employee Retirement Income Security Act of 1974, as amended (ERISA). The Training Trust is administered by a Board of Trustees composed of an equal number of representatives from labor and management designated in accordance with the provisions of 29 USC § 186.

8. At all material times hereto, plaintiff Barnes-Allison Labor-Management Cooperation Committee Trust Fund ("BALMCC") was and is an employee benefit plan within the meaning of 29 USC § 1002, *et. seq.* of the Employee Retirement Income Security Act of 1974, as amended (ERISA). BALMCC is administered by a Board of

Trustees composed of an equal number of representatives from labor and Management designated in accordance with the provisions of 29 USC § 186.

9.  At all material times hereto, the International Brotherhood of Electrical Workers, Local 48 is a labor organization with its principal office and place of business in Multnomah County, Oregon ("Local 48"), representing employees of the Alameda.

10. Hereafter, Harrison Trust, Edison Trust, NEBF, District 9 Pension, NECA-IBEW Electrical Training Trust, and BALMCC Plan together will be collectively referred to as Trust Funds ("Trust Funds").

11. At all material times hereto, Defendant Alameda Electric LLC ("Alameda") was and is a limited liability corporation organized under Oregon law that does business in Multnomah County, Oregon.

## JURISDICTION AND VENUE

12. This court has jurisdiction over this action pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 USC §§ 1132 and 1145 and further as provided under 29 USC § 186.

13. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 USA § 1132.

14. At all material times to this proceeding, defendant Alameda was bound by the written CBAs with Local 48, specifically the Commercial/Industrial (Inside) Agreement, and the Residential Agreement (the "CBAs").

15. Plaintiffs Trust Funds maintain their principal office, within the meaning of 29 USC § 1132(k), in the District of Oregon.

16. By virtue of the provisions in the CBAs, Alameda agreed to be bound to the terms of the trust agreement and plan for each fringe benefit fund, and acknowledged,

accepted, and agreed to the delegation of the collection authority to the Audit Committee.

17. The trust agreements provide that the venue in legal proceedings initiated by Trust funds may be in Multnomah County, Oregon.

18. The Court should assume pendent jurisdiction over the Second Claim for Relief against defendant which alleges breach of contract for the following reasons:

    a. The Court has jurisdiction over Plaintiffs' First Claim for Relief which alleges violations of ERISA and of the LMRA;

    b. The claim for breach of contract is based upon the same operative facts which are alleged in Plaintiffs' ERISA and LMRA claims; and

    c. Judicial economy, convenience and fairness to the parties will result if the Court assumes and exercises pendent jurisdiction over Plaintiffs' Second and Third Claims for Relief.

**FIRST CLAIM FOR RELIEF**
**(ERISA ACTION FOR OUTSTANDING TRUST FUND CONTRIBUTIONS AND SPECIFIC ENFORCEMENT OF THE CBA)**

19. Under the terms of the CBAs between Defendant Alameda and Local 48 and the terms of the Trust Agreements of the Trust Funds Alameda agrees to make payments provided for in said agreements each month on behalf of each employee covered by the collective bargaining agreement for employee benefits. Alameda agrees thereby to be bound by the terms of the Trust Agreement and the acts and determinations of the Trustees.

20. Proper payments were not made on all compensable hours for all employees working under the written collective bargaining agreement for the period of

January 1, 2013 through and including December 31, 2013.  The total shortage as revealed by an audit of Alameda's books and records is the sum of $7,114.28.

21. Demand was made upon Alameda for payment of the shortages and Alameda failed to pay the shortages disclosed by the audit.

22. The Trust Agreement provides that, in the event an Employer does not properly pay contributions by the due date, interest on the outstanding contributions is due from the date until paid at the rate of 1 percent per month.  Interest continues to accrue at the rate of 1% per month until paid.

23. Pursuant to the provisions of 29 U.S.C. § 1132 and pursuant to the terms of the Trust Funds' Trust Agreements, by reason of Alameda's failure to make payments by the due date, Alameda is obligated to pay liquidated damages to Plaintiff which are due in the minimum amount of $150.00.

24. As a result of the failure of Alameda to make its payments by the due date, Plaintiff is entitled to liquidated damages of $150.00.

25. The Trust Agreement further provides that, in the event the Trustees place the account in the hands of legal counsel for collection, the delinquent employer shall be liable for all reasonable costs incurred in the collection process, including audit fees.  Audit fees incurred by the Trust in this case are in the amount of $1,015.00 and are due and payable by Alameda to the Plaintiff

26. Plaintiff is entitled to its reasonable attorney's fees incurred herein pursuant to the provisions of 29 U.S.C. § 1132 and pursuant to the terms of the Trust Agreements.

///

///

## SECOND CLAIM FOR RELIEF
### (ERISA CLAIM FOR OUTSTANDING INTEREST ON DELINQUENT CONTRIBUTIONS, PENDANT CLAIM FOR OUTSTANDING LIQUIDATED & DAMAGES AND SPECIFIC ENFORCEMENT OF THE CBA)

27. The Trust Funds re-allege paragraphs 1 through 26 above as if fully set forth herein.

28. At the time each of the Trust Agreements were written it was impracticable and extremely difficult to fix the amount of damages or harm that would be caused to each Trust Fund by the failure of an employer to properly and timely pay contributions. The Trustees of each Trust Fund provided that liquidated damages would be due upon failure to timely pay contributions. Such a sum was settled upon by the Trustees of the each Trust Fund as a reasonable forecast of the compensation for the damages to each of the Trusts arising from a delinquency and because it is not possible to make an accurate estimation of the damages caused by a delinquency.

29. Alameda failed to make its payments of contributions to the Plaintiff Trust Fund by the date due for the months of October 2013 and March 2015.

30. By reason of Alameda's failure to make the payments by the date due, Alameda is indebted to Plaintiff Trust Fund in the additional sum (additional to the amount sought in Plaintiffs' First Claim for Relief) of $425.00 as liquidated damages, and in the sum of $.30 as interest, plus collection costs incurred herein.

31. Demand was made upon Alameda for payment of the above amount, but Alameda failed, refused and neglected to pay said amount.

32. The Plaintiff Trust Fund is entitled to recover a reasonable attorneys' fee from Alameda based on the terms of the collective bargaining agreement, the

Subscription Agreement and the Trust Agreement, as amended, which governs the Trust Fund.

## THIRD CLAIM FOR RELIEF
### (PENDANT CLAIM FOR BREACH OF CONTRACT)

33. Plaintiffs re-allege paragraphs 1 through 32 above as if fully set forth herein.

34. The CBAs provide that the Audit Committee shall enforce collection of, and defendant shall collect by wage withholding and forward to the Audit Committee collection agent, certain amounts due to employees for union dues, the Political Action Committee, working dues and vacation funds.

35. The CBAs provide that defendant shall pay to the Audit Committee's collection agent certain amounts due to employees for Administrative Fund contributions.

36. The amounts due for union dues, the Political Action Committee, working dues, vacation funds and the Administrative Fund are due and payable on the 15th day of the month following the month in which the hours were worked and wages were earned which form the basis of the calculation of the amounts due.

37. Proper payments of union dues, the Political Action Committee, working dues, vacation funds and the Administrative Fund was not made on all compensable hours for the period of January 1, 2013 through and including December 31, 2013. The total shortage as revealed by an audit of Alameda's books and records is the sum of $1,788.39.

38. Pursuant to ORS 82.010 *et seq* monies which become due and owing bear interest at the rate of nine per cent per annum. Interest accrues daily on the total

amount due for PAC, union dues, working dues, vacation funds, and Administrative Funds at the rate of nine (9%) per cent per annum.  Plaintiffs should be awarded interest on the balance due for wages withheld and/or due from the date due until Judgment is obtained at the rate of nine (9%) per cent per annum or the sum of $295.01 calculated through November 15, 2015.

WHEREFORE, plaintiffs pray for judgment against Alameda as follows:

1. Under the First Claim for Relief:

   a. For unpaid contributions in the amount of $7,114.28;

   b. For liquidated damages in the sum of $150.00; and

   c. For interest on the outstanding amount due from the date demand for payment was made until paid at the rate of one percent per month.

2. Under the Second Claim for Relief:

   a. For liquidated damages in the sum of $425.00; and

   b. For interest on the amount due calculated at the rate of one percent per month or the sum of $.30.

3. Under the Third Claim for Relief:

   a. For wage withholdings in the sum of $1,788.39; and

   b. For interest at the rate of nine per cent per annum or calculated from January 15, 2014 through November 15, 2015 in the total sum of $295.01.

3. For plaintiffs' reasonable attorney fees and costs and disbursements incurred.

/ / /

/ / /

/ / /

4. For such other and further relief as the court deems just and proper.

DATED this 18th day of November, 2015.

>BENNETT, HARTMAN, MORRIS & KAPLAN, LLP
>
>/s/Linda J. Larkin
>**Linda J. Larkin**
>Oregon State Bar #79295
>Telephone: 503-227-4600
>E-Mail: larkinl@bennetthartman.com
>**Attorney for All Plaintiffs**